UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

v.

KELON RENARDO HARDIN,
　　　　　　　*Defendant-Appellant.*

No. 02-4502

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CR-01-559)

Argued: May 7, 2004

Decided: August 18, 2004

Before NIEMEYER, MICHAEL, and TRAXLER, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Andrew David Grimes, Summerville, South Carolina, for Appellant. Michael Rhett DeHart, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United States Attorney, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Kelon R. Hardin appeals from his conviction and sentence on sev-
eral federal drug and firearms charges. The main issue is whether
Hardin could be given a mandatory life sentence under the three-
strikes law, 18 U.S.C. § 3559(c), on his count 5 conviction for using
a firearm in furtherance of a drug trafficking crime. Because the gov-
ernment did not give Hardin the required notice of two qualifying
predicate offenses, his conviction on count 5 does not count as a third
strike; we therefore vacate his sentence and remand for resentencing.
We reject Hardin's evidentiary challenges to his convictions on
counts 1, 4, 7, and 8, and we affirm his convictions on those counts.

I.

A federal grand jury in South Carolina indicted Hardin on eight
federal drug and firearms counts in July 2001. Specifically, Hardin
was charged with conspiring with Mark Rivers and Candace Hardin
to possess with the intent to distribute over 50 grams of cocaine base
and less than 500 grams of cocaine in violation of 21 U.S.C.
§ 841(a)(1) (count 1); making false statements to federal firearms
dealers in connection with the acquisition of firearms in violation of
18 U.S.C. § 922(a)(6) (counts 2 and 3); possession with the intent to
distribute over 50 grams of cocaine base on June 10, 2001, in viola-
tion of 21 U.S.C. § 841(a)(1) (count 4); possession of a firearm in fur-
therance of a drug trafficking crime in violation of 18 U.S.C.
§ 924(c)(1)(A) (count 5); being a felon in possession of a firearm in
violation of 18 U.S.C. § 922(g)(1) (count 6); possession with intent
to distribute less than 500 grams of cocaine and less than 5 grams of
cocaine base on June 12, 2001, in violation of 21 U.S.C. § 841(a)(1)
(count 7); and being a felon in possession of ammunition, a single .45
caliber bullet, in violation of 18 U.S.C. § 922(g)(1) (count 8).

A few days before Hardin's January 2002 trial, the United States filed an "Information Regarding Imposition of Mandatory Sentence of Life Imprisonment and Other Mandatory Sentences" (the information). J.A. 27-28. The information gave Hardin notice of the predicate offenses upon which the government intended to rely to seek sentence enhancements, including four offenses that the government alleged supported a mandatory life sentence under the three-strikes law.

The evidence presented at the two-day trial, viewed in the light most favorable to the government, established the following facts, among others. The investigation of Hardin began when one of his drug customers, Shawn Phillips, was arrested for selling crack and agreed to cooperate with the local narcotics task force. Phillips and an undercover officer conducted a controlled buy of crack from Hardin at Hardin's residence on June 10, 2001. During the buy Phillips saw Hardin cooking a batch of crack in the kitchen where a black handgun lay on the counter. Two days later local officers executed a state search warrant at Hardin's residence. They seized 51.13 grams of powder cocaine, 0.34 grams of crack cocaine, drug paraphernalia, over two thousand dollars, two boxes for Glock .45 caliber semi-automatic pistols, and a magazine for a .45 caliber pistol with one bullet inside. Hardin was not home at the time of the search.

Before Phillips was arrested, he bought crack from Hardin almost every day. Phillips saw Hardin sell drugs to Mark Rivers, and Hardin told Phillips to buy his crack from Rivers when Hardin was out of town. According to Hardin's wife, Candace Hardin, her husband made his money exclusively from selling drugs, and he was involved in the drug trade with both herself and Rivers. Candace Hardin said that she, her minor children, and Hardin lived at the home searched by law enforcement and that he cooked and sold quantities of crack in excess of 50 grams there every day. Finally, Hardin often carried a Glock pistol when he was home, and he had even shot his pistol in the backyard.

The district court dismissed count 2 at the close of the evidence. The jury convicted Hardin on the seven remaining counts. The district court sentenced him under the three-strikes law to mandatory life imprisonment on count 5. The court concluded that Hardin had been convicted of the two required predicate offenses because six of

Hardin's prior offenses — including three not included in the information — could have counted as predicates. Hardin was also sentenced to 360 months on counts 1, 4, and 7, 180 months on counts 6 and 8, and 120 months on count 3. All of the sentences were to be served concurrently, except the mandatory life sentence, which was to be served consecutively to the other sentences. Hardin appeals.

## II.

We first consider Hardin's challenge to his enhanced sentence under the three-strikes law, 18 U.S.C. § 3559(c), on count 5 for using a firearm in furtherance of a drug trafficking crime. The three-strikes law requires a life sentence for a defendant convicted of "a serious violent felony" if he has prior, final federal or state convictions for "2 or more serious violent felonies" or "one or more serious violent felonies and one or more serious drug offenses." 18 U.S.C. § 3559(c)(1). If the government intends to seek a mandatory life sentence under § 3559(c), the U.S. Attorney must file an information informing the defendant of the predicate offenses supporting that sentence, using the procedures in 21 U.S.C. § 851(a). 18 U.S.C. § 3559(c)(4). Hardin does not dispute that his conviction on count 5 (using a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)) is a serious violent felony. *See* 18 U.S.C. § 3559(c)(2)(F)(i). He argues only that his count 5 conviction is not a third strike because the government failed to give notice of two *qualifying* predicate offenses, which is necessary to trigger a life sentence under 18 U.S.C. § 3559(c). As a result, Hardin contends that his life sentence should be vacated.

Our review of whether Hardin's prior offenses qualify him for a mandatory life sentence under § 3559(c) is for plain error because Hardin failed to raise this issue before the district court. *See United States v. Olano*, 507 U.S. 725, 731 (1993). Under plain error analysis we may correct an error not brought to the attention of the trial court if (1) there is an error (2) that is plain and (3) that affects substantial rights. *Id.* at 732. "If all three [of these] conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *Olano*, 507 U.S. at 732) (internal

quotation marks omitted; second alteration in original). We first consider whether the district court's reliance on Hardin's prior convictions was error and whether that error was plain.

We begin our examination of Hardin's prior convictions by focusing on the four convictions the government included in the information. The government concedes that one of those offenses does not count as a § 3559(c) strike. Hardin concedes that the information includes another offense that does count as a § 3559(c) strike because it meets the statutory definition of a serious violent felony. We must therefore determine whether Hardin committed either a drug offense or another felony that counts as the second predicate offense for purposes of the statute. We conclude that he did not.

The only other offenses noticed in the information are two state cocaine distribution convictions; neither, however, is a "serious drug offense" as that term is defined by the three-strikes law. For a state drug conviction to count as a predicate offense, the conviction must involve a specified (and sizeable) quantity of drugs. 18 U.S.C. § 3559(c)(2)(H)(ii). The term "serious drug offense" includes, among other offenses, "an offense under State law that, had the offense been prosecuted in a court of the United States, would have been punishable under" 21 U.S.C. § 841(b)(1)(A). 18 U.S.C. § 3559(c)(2)(H)(ii). This means that Hardin's prior cocaine offenses must have involved 5 kilograms or more of cocaine or 50 grams or more of cocaine base. 21 U.S.C. § 841(b)(1)(A)(ii), (iii). Therefore, we look to the quantity of cocaine and cocaine base involved in Hardin's state drug convictions to determine if they are serious drug offenses.

We have found no cases addressing the procedure under the three-strikes law for determining whether a state offense involved a sufficient quantity of drugs to be punishable under § 841(b)(1)(A). However, when applying other recidivist enhancements, we take a categorical approach, looking only to the elements of the state offense of conviction and any facts necessary to the prior conviction as indicated by the charging papers, jury instructions, verdict, or judgment. *Taylor v. United States*, 495 U.S. 575, 602 (1990) (applying 18 U.S.C. § 924(e)); *United States v. Kirksey*, 138 F.3d 120, 124 (4th Cir. 1998) (applying U.S.S.G. § 4B1.2). A similar approach should apply in deciding whether a state drug conviction would be punish-

able under § 841(b)(1)(A). Otherwise, we risk a "series of minitrials" to determine the quantity of drugs involved in each prior offense; those minitrials "would not only be costly, but unreliable." *Kirksey*, 138 F.3d at 124 (internal quotation marks omitted). Because Hardin's state drug convictions were the result of guilty pleas and the record does not contain the charging papers or judgments, we do not know whether he agreed to plead guilty because the offenses pleaded to involved lesser quantities of drugs than what the government now seeks to establish for recidivist sentencing purposes. As the Supreme Court has said, "it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty" to the greater offense even if the government proved the facts underlying the predicate offense to the *later* sentencing judge. *Taylor*, 495 U.S. at 601-02. The government does not argue — and there is no indication — that the drug quantity necessary for a conviction under § 841(b)(1)(A) constituted an element of Hardin's state drug offenses or that such a quantity was specified in the charging papers. Thus, it was error for the district court to rely on the drug convictions noticed in the information.

The government contends that the error was not plain because the presentence report indicated the drug quantities for Hardin's state law offenses. Even if a presentence report's account of drug quantities underlying a state offense could in some cases prevent a three-strikes sentencing error from being plain, this is not such a case. The report indicates that Hardin's state drug offenses did not involve the requisite drug quantity. Although the report notes two convictions, it only mentions one specific drug quantity: 0.2 grams of cocaine base. Of course, two-tenths of a gram of cocaine base is far less than the 50 grams required for punishment under 21 U.S.C. § 841(b)(1)(A)(iii). The presentence report also says that Hardin "flush[ed] a quantity of suspected *cocaine* before officers could apprehend him" while executing a search warrant. J.A. 469 (emphasis added). The report's reference to Hardin flushing "a quantity" of cocaine is too vague to establish that he flushed the five kilograms — over eleven pounds — of cocaine required for punishment under 21 U.S.C. § 841(b)(1)(A)(ii).

Because it was not established that Hardin's state drug convictions involved the requisite quantity of cocaine or cocaine base, we con-

clude that it was plain error for the district court to rely on these offenses as predicates for imposing a mandatory life sentence under 18 U.S.C. § 3559(c).

Next, we address the district court's conclusion that the government was not required to give Hardin notice of the predicate offenses supporting a mandatory life sentence under § 3559(c) and the court's reliance in the alternative on one drug and two felony convictions that the government failed to include in the information. In a section titled "Information filed by United States Attorney," the three-strikes law says that the provisions of 21 U.S.C. § 851(a) "shall apply to the imposition of sentence under this subsection." 18 U.S.C. § 3559(c)(4). The incorporated provision, 21 U.S.C. § 851(a), says that "[n]o person . . . shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial . . . the United States attorney files an information with the court (and serves a copy of such information on the person . . . ) stating in writing the previous convictions to be relied upon." Although the statute allows "[c]lerical mistakes in the information [to] be amended at any time prior to the pronouncement of sentence," *id.*, the government's mistake here — failing to make *any* reference to three prior convictions — cannot be described as clerical. Nor did the government attempt to amend the information. *Cf. United States v. Campbell*, 980 F.2d 245, 252 (4th Cir. 1992) (permitting amendment when "[t]he original information clearly identified the Virginia conviction as the basis for enhancement of Campbell's federal sentence. The purpose of amendment [changing a United States Code section reference] was to correct a clerical error."). Given the unequivocal language of the statute, it was plain error for the district court to conclude that the government was not required to file an information for sentencing under § 3559(c) and to rely on offenses not noticed in the information filed by the government. Therefore, we conclude that it was error for the district court to sentence Hardin under § 3559(c) when he had only one qualifying predicate offense and that this error was plain.

We now consider the third part of plain error analysis, whether the district court's erroneous sentencing of Hardin to a mandatory life term affected his substantial rights. *See Olano*, 507 U.S. at 734. "[I]n most cases [this] means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id.*

Because Hardin did not receive a life sentence on any other count, the outcome of the sentencing was affected by the error. If the district court had sentenced Hardin under the Guidelines on count 5, the pre-sentence report indicates he would have received a consecutive term of 84 months imprisonment. For Hardin, who was twenty-six years old at the time of his sentencing, there is no question that his substantial rights were affected by receiving a consecutive life sentence instead of a thirty-seven year total term of imprisonment under the Guidelines (360 months for the concurrent sentences plus 84 consecutive months for count 5). *See United States v. Ford*, 88 F.3d 1350, 1356 (4th Cir. 1996) (holding that the defendant's substantial rights were affected by error increasing his total imprisonment by three years); *cf. United States v. Mackins*, 315 F.3d 399, 410 (4th Cir. 2003) (applying harmless error and holding that a forty-six-year-old defendant's substantial rights were affected by receiving a life sentence when the Guidelines only mandated a sentence of ninety years).

We reject the government's argument that Hardin's substantial rights were not affected because he *could* have received a life sentence on several other counts. This argument fails because the district court, in its discretion, sentenced Hardin to less than life on all of the counts where the Guidelines range included life. The two cases cited by the government are inapplicable to Hardin's situation. In *United States v. White*, 238 F.3d 537, 543 (4th Cir. 2001), we held that a defendant's substantial rights were not affected by an *Apprendi* error because the Guidelines *required* the district court to impose consecutive sentences "to the extent necessary to achieve the total punishment" mandated by the Guidelines. The defendant in *White*, therefore, would have received the same total prison time regardless of the error. The district court here, however, was not required to impose a life sentence. Nor is the government helped by *United States v. Diaz*, 176 F.3d 52, 118 (2d Cir. 1999). *Diaz* held that there was no plain error because the sentence imposed by the district court was also within the Guidelines range that the appellant argued should have been applied for the same count. Life imprisonment was not in the Guidelines range for count 5. Even if it was, the Second Circuit's reasoning would not be applicable because the district court did not exercise any discretion in imposing the life sentence for count 5. At argument the government contended that the district court gave Hardin less than life on the other counts because the court "knew" it would impose a man-

datory life sentence on count 5. However, at no time did the district court indicate that it believed Hardin deserved a life sentence or that it would have imposed a life sentence on another count if Hardin was not eligible for a § 3559(c) mandatory life sentence. Thus, Hardin's substantial rights were affected by the error.

Finally, we consider whether we should notice the error in Hardin's sentencing. We conclude that we should because to require a man to spend his life in prison when under the law he should complete his sentence by age 63 "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (internal quotation marks and alteration omitted). We came to the same conclusion in *Ford*, 88 F.3d at 1356, because "[n]o court of justice would require a man to serve three [or more] undeserved years in prison when it knows that the sentence is improper."

In sum, the district court committed plain error by sentencing Hardin to mandatory life imprisonment under § 3559(c), that error affected Hardin's substantial rights, and we notice the error because it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (internal quotation marks and alteration omitted). Thus, we vacate Hardin's sentence and remand for resentencing.

## III.

Hardin also challenges the sufficiency of the evidence supporting his convictions on counts 1, 4, 7, and 8. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942). We conclude that substantial evidence supports the jury's verdict and affirm each challenged conviction for the reasons that follow.

Hardin first argues there was insufficient evidence of a conspiracy on count 1 (conspiracy to possess with intent to distribute over 50 grams of cocaine base and less than 500 grams of cocaine). The evidence recounted in part I, however, establishes that Hardin conspired to sell drugs with both Mark Rivers and Candace Hardin.

Second, Hardin argues that there was insufficient evidence of the quantity of cocaine base on count 4 (possession with intent to distribute over 50 grams of cocaine base). There was testimony that allowed the jury to find that Hardin regularly possessed over 50 grams of cocaine base, including on the day charged in the indictment.

Third, Hardin contends there was insufficient evidence of possession on count 7 (possession with intent to distribute less than 500 grams of cocaine and less than 5 grams of cocaine base) and count 8 (being a felon in possession of ammunition) because he was not at home at the time the officers executed the warrant and uncovered the drugs and ammunition in question. The evidence of possession was sufficient because the items were found at Hardin's residence and there was overwhelming evidence that Hardin conspired with the home's only other adult resident to sell crack, that he regularly sold crack from the residence, and that the bullet was found in a magazine for the type of pistol Hardin regularly carried.

Finally, Hardin argues that there was insufficient evidence on the interstate commerce element of count 8. *See*, *e.g.*, *United States v. Wells*, 98 F.3d 808, 811 (4th Cir. 1996) (noting that the government must prove the jurisdictional element of the felon in possession statute). This argument is without merit because Hardin stipulated at trial that "the ammunition, Exhibit No. 12, had been shipped and transported in interstate commerce." J.A. 296. The stipulation is sufficient to support the jury's finding on the interstate commerce element. *E.g.*, *United States v. Chesney*, 86 F.3d 564, 570 (6th Cir. 1996); *United States v. Lee*, 72 F.3d 55, 58 (7th Cir. 1995).

## IV.

For the foregoing reasons, we vacate Hardin's sentence because he should not have been sentenced to life on count 5. We affirm his convictions on counts 1, 4, 7, and 8. The case is remanded for resentencing.

*AFFIRMED IN PART*,
*VACATED IN PART*,
*AND REMANDED*